UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL KENT, Individually and On Behalf of All Others Similarly Situated, | )<br>)<br>) |
| Plaintiff, | ) Case No. _____<br>) |
| v. | ) JURY TRIAL DEMANDED<br>) |
| CHURCHILL CAPITAL CORP III, MICHAEL KLEIN, JEREMY PAUL ABSON, GLENN AUGUST, MIKE ECK, BONNIE JONAS, MARK KLEIN, MALCOM S. MCDERMID, and KAREN MILLS, | ) <u>CLASS ACTION</u><br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. On July 12, 2020, Churchill Capital Corp III's ("Churchill" or the "Company") Board of Directors (the "Board" or "Individual Defendants") caused Churchill to enter into an agreement and plan of merger (the "Merger Agreement") with Churchill Music Merger Sub I, Inc. ("First Merger Sub"), Music Merger Sub II, LLC ("Second Merger Sub"), Polaris Parent Corp. ("Parent"), and Polaris Investment Holdings, L.P. ("Holdings," and together with Parent, "Multiplan").

2. Pursuant to the terms of the Merger Agreement, among other things: (i) First Merger Sub will merge with and into Parent, with Parent surviving; (ii) Second Merger Sub will merge with and into the surviving corporation, with Second Merger Sub surviving as a wholly-

owned subsidiary of Churchill; and (iii) Churchill will pay to Holdings an aggregate of $5,678,000,000 in a combination of cash and Churchill common stock (the "Proposed Transaction").

3. On July 31, 2020, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC"), which recommends that Churchill's stockholders vote to approve the Proposed Transaction.

4. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Churchill common stock.

9. Defendant Delaware is a Delaware corporation and maintains its principal executive offices at 640 Fifth Avenue, 12th Floor, New York, New York 10019. Churchill's common stock is traded on the New York Stock Exchange under the ticker symbol "CCXX."

10. Defendant Michael Klein ("Klein") is Chief Executive Officer and Chairman of the Board of the Company.

11. Defendant Jeremy Paul Abson is a director of the Company.

12. Defendant Glenn August is a director of the Company.

13. Defendant Mike Eck is a director of the Company.

14. Defendant Bonnie Jonas is a director of the Company.

15. Defendant Mark Klein is a director of the Company.

16. Defendant Malcolm S. McDermid is a director of the Company.

17. Defendant Karen Mills is a director of the Company.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Churchill (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20. This action is properly maintainable as a class action.

21. The Class is so numerous that joinder of all members is impracticable. As of July 12, 2020, there were approximately 110,000,000 shares of Class A common stock of Churchill outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22. Questions of law and fact are common to the Class, including, among others, whether defendants violated the Exchange Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

23. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Proposed Transaction*

26. On July 12, 2020, the Individual Defendants caused Churchill to enter into the Merger Agreement.

27. Pursuant to the terms of the Merger Agreement, among other things: (i) First Merger Sub will merge with and into Parent, with Parent surviving; (ii) Second Merger Sub will merge with and into the surviving corporation, with Second Merger Sub surviving as a wholly-

owned subsidiary of Churchill; and (iii) Churchill will pay to Holdings an aggregate of $5,678,000,000 in a combination of cash and Churchill common stock.

28. According to the press release announcing the Proposed Transaction:

Churchill Capital Corp III ("Churchill") (NYSE: CCXX), a public investment vehicle, and MultiPlan, Inc. ("MultiPlan"), a market-leading, technology-enabled provider of end-to-end healthcare cost management solutions, announced today that they have entered into a definitive agreement to merge. The combined company will operate as MultiPlan and will be listed on the NYSE. The transaction implies an initial enterprise value for MultiPlan of approximately $11 billion or approximately 12.9x estimated 2021 Adjusted EBITDA. The transaction will bring to MultiPlan up to $3.7 billion of new equity or equity linked capital to substantially reduce its debt and fund new value-added services. . . .

Summary of Transaction

Churchill will contribute up to $1.1 billion of cash raised during its initial public offering in February 2020. Further, additional investors have committed to participate in the transaction through PIPE commitments to a $2.6 billion new private capital raise consisting of a $1.3 billion common stock at $10 per share and $1.3 billion of 6 percent interest convertible debt, with a conversion price of $13 per share. The convertible debt provides flexible capital, including a non-cash pay option.

The total investment of up to $3.7 billion raised in this transaction will be used to pay down existing debt, purchase a portion of the equity owned by existing MultiPlan shareholders and capitalize the MultiPlan balance sheet. As a result of this transaction, MultiPlan's leverage will be significantly reduced and its existing Net Debt to Adjusted EBITDA ratio will be reduced from 6.8x to approximately 5.8x with its Net Debt to Adjusted EBITDA at the operating company level decreasing to 4.1x[1]. The additional capital and public stock currency will allow the Company to advance its strategy of investing in organic and acquisition growth, and to increase its investment in data, machine learning and artificial intelligence technologies.

In connection with the transaction, Churchill's sponsor has entered into an agreement to amend the terms of its founder equity to align with the long-term value creation and performance of MultiPlan. Churchill's sponsor has agreed that a portion of its equity will vest only if the share price of the Company exceeds $12.50 per share over a period between the first and fifth anniversaries of the closing of the transaction, and have agreed not to transfer unvested equity. Churchill has received commitments from its investors and the new PIPE investors for funding that is sufficient to close the transaction.

5

> The Boards of Directors of both Churchill and MultiPlan have unanimously approved the proposed transaction.
>
> The transaction is expected to be completed by the end of October 2020, subject to approval by Churchill stockholders representing a majority of the outstanding Churchill voting power, the expiration of the HSR Act waiting period and other customary closing conditions. . . .
>
> Advisors
>
> Citigroup is serving as the private placement agent and capital markets advisor to Churchill. Citigroup and Goldman Sachs served as financial advisors and Weil, Gotshal & Manges LLP served as legal counsel to Churchill. Credit Suisse served as a capital markets advisor to Churchill. Citigroup and Goldman Sachs were joint book running managers for Churchill Capital Corp III.
>
> Centerview Partners, Barclays, BofA Securities and UBS Investment Bank served as financial advisors to MultiPlan. Kirkland & Ellis and Simpson Thacher & Bartlett served as legal counsel to MultiPlan and H&F.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

29. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

30. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

31. First, the Proxy Statement omits material information regarding the Company's and MultiPlan's financial projections.

32. The Proxy Statement fails to disclose the Company's financial projections.

33. With respect to MultiPlan's financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate (a) Adjusted EBITDA and (b) levered free cash flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

34. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company.

35. Second, the Proxy Statement omits material information regarding the Company's financial advisors, Goldman Sachs ("Goldman"), Citigroup, Inc. ("Citi"), and The Klein Group, LLC ("KG").

36. The Proxy Statement fails to disclose the terms of Goldman's and Citi's engagements, including: (i) the amount of compensation Goldman and Citi have received or will receive in connection with their engagements; (ii) the amount of Goldman's and Citi's compensation that is contingent upon the consummation of the Proposed Transaction; (iii) whether Goldman and Citi have performed past services for any parties to the Merger Agreement or their affiliates; (iv) the timing and nature of such services; and (v) the amount of compensation received by Goldman and Citi for providing such services.

37. The Proxy Statement fails to disclose material information regarding KG's engagement, including: (i) whether KG has performed past services for any parties to the Merger Agreement or their affiliates; (ii) the timing and nature of such services; (iii) the amount of compensation received by KG for providing such services; and (iv) the amount of compensation Individual Defendant Klein will receive as a result of KG's engagement.

38. The Proxy Statement also fails to disclose whether the Individual Defendants discussed the potential or actual conflicts of interest posed by retaining: (i) KG, which is a wholly-owned subsidiary of M. Klein and Company, which was founded by Individual Defendant Klein and where Klein currently serves as Managing Partner; (ii) Citi, where Klein worked for over two decades, including as Chairman and Co-Chief Executive Officer of Citi Markets and Banking; and (iii) Goldman, where Geoffrey G. Clark, a director of MultiPlan, served as Partner and Managing Director.

39. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

40. Third, the Proxy Statement fails to disclose the analyses performed by KG, Citi, and/or Goldman in connection with the Proposed Transaction.

41. Moreover, the Proxy Statement fails to disclose who prepared the "Comparable Company Analysis" referenced in the Proxy Statement.

42. Fourth, the Proxy Statement fails to disclose whether the Company entered into any nondisclosure agreements during the process leading up to the execution of the Merger Agreement (in addition to the nondisclosure agreement executed by MultiPlan), and if so, the terms of such agreements.

43. Fifth, the Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of the Company's officers and directors, including who participated in all such communications.

44. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

45. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Churchill**

46. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

47. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in

light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Churchill is liable as the issuer of these statements.

48.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within Churchill, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

49.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

50.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

51.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

52.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

53.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants**

54.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of Churchill within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Churchill and participation in and/or awareness of Churchill's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Churchill, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Churchill, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

58. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and

proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.   Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.   In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.   Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.   Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.   Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.   Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

|  |  |
|---|---|
| Dated: August 13, 2020 | **RIGRODSKY & LONG, P.A.** |
|  | By: */s/ Gina M. Serra* |
|  | Seth D. Rigrodsky (#3147) |
|  | Brian D. Long (#4347) |
| **OF COUNSEL:** | Gina M. Serra (#5387) |
|  | 300 Delaware Avenue, Suite 210 |
|  | Wilmington, DE 19801 |
| **RM LAW, P.C.** | Telephone: (302) 295-5310 |
| Richard A. Maniskas | Facsimile: (302) 654-7530 |
| 1055 Westlakes Drive, Suite 300 | Email: sdr@rl-legal.com |
| Berwyn, PA 19312 | Email: bdl@rl-legal.com |
| Telephone: (484) 324-6800 | Email: gms@rl-legal.com |
| Facsimile: (484) 631-1305 |  |
| Email: rm@maniskas.com | *Attorneys for Plaintiff* |